IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


LEITA L. FRITZSON,                    )
                                      )
                Plaintiff,            )
                                      )    CIVIL ACTION
v.                                    )
                                      )    No. 07-4137-JAR-DWB
                                      )
MICHAEL J. ASTRUE,                    )
Commissioner of Social Security,      )
                                      )
                Defendant.            )
_____)


REPORT AND RECOMMENDATION

        Plaintiff seeks review of a decision of the Commissioner of
Social Security (hereinafter Commissioner) denying disability
insurance benefits (DIB) under sections 216(i) and 223 of the
Social Security Act.  42 U.S.C. §§ 416(i) and 423 (hereinafter
the Act).  Finding error, the court recommends the decision be
REVERSED and the case be REMANDED for further proceedings
consistent with this opinion.

I.   Background

        Plaintiff applied for DIB, alleging disability beginning
Aug. 13, 2004.  (R. 20, 102-07).  Her application was denied
initially and upon reconsideration, and plaintiff timely
requested a hearing before an Administrative Law Judge (ALJ).
(R. 20, 29, 30, 45-46).  On Feb. 6, 2007, a hearing was held

before ALJ Edmund C. Werre.  (R. 20, 414-42).  Plaintiff appeared
at the hearing, and was represented by an attorney.  (R. 20,
414).  Testimony was taken from plaintiff and from a vocational
expert.  Id.  Thereafter, on Mar. 23, 2007, the ALJ issued a
decision in which he found that plaintiff is not disabled within
the meaning of the Act, and denied the application.  (R. 20-28).

Specifically, the ALJ found that during the relevant time
frame plaintiff has not engaged in substantial gainful activity
and that she has a severe combination of impairments including
degenerative disc disease, diabetes, hypothyroidism,
gastroesophageal reflux disorder, irritable bowel syndrome, and
hypertension, but that no impairment or combination of
impairments meets or medically equals the severity of an
impairment in the Listing of Impairments.  (R. 22).  He stated
that Listing 1.04A was not met "because there is no nerve root
compression."  Id.

The ALJ summarized the evidence, plaintiff's testimony, and
the medical opinions of Dr. Woodall, Dr. Shafer, and Dr. Hsu.
(R. 23-27).  He gave Dr. Woodall's opinion "less than controlling
weight," noted that Dr. Shafer "did not refer the claimant to a
specialist and did not recommend surgery," and stated, "The
residual functional capacity in this decision is consistent with
Dr. Hsu's opinion with the addition of sitting and standing
alternation."  (R. 24).  He found that plaintiff's "statements

-2-

concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely credible." (R. 27). Ultimately he assessed plaintiff with the residual functional capacity (RFC) for a limited range of light work, limited to: lifting ten pounds frequently, and fifteen pounds occasionally; standing and/or walking for two hours and sitting for six hours in a workday when given the option to alternate between sitting and standing every sixty minutes; no climbing of ladders, ropes, and scaffolds; and no vibration in the work environment. (R. 23).

The ALJ found that plaintiff is unable to perform any of her past relevant work, but that there are a significant number of jobs in the economy for which plaintiff has the capacity, such as work as an electrical assembler, a marker, a stuffer, or an order clerk. (R. 27-28). Consequently, he found that plaintiff is not disabled within the meaning of the Act, and denied her application for DIB. (R. 28).

Plaintiff requested review of the ALJ's decision, and submitted a brief detailing her allegations of error. (R. 14, 409-13). The Appeals Council made the brief a part of the record, but concluded that there was no basis for changing the ALJ's decision, and denied plaintiff's request for review. (R. 6-9). Therefore, the ALJ's decision is the final decision of the Commissioner. Id.; Blea v. Barnhart, 466 F.3d 903, 908 (10th Cir. 2006). Plaintiff now seeks judicial review.

-3-

## II.  Legal Standard

The court's review is guided by the Act.  42 U.S.C. § 405(g).  Section 405(g) provides, "The findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  The court must determine whether the factual findings are supported by substantial evidence in the record and whether the ALJ applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  Substantial evidence is more than a scintilla, but less than a preponderance, and it is such evidence as a reasonable mind might accept to support a conclusion.  Zoltanski v. F.A.A., 372 F.3d 1195, 1200 (10th Cir. 2004); Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).  The court may "neither reweigh the evidence nor substitute [it's] judgment for that of the agency."  White, 287 F.3d at 905 (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005).  The determination of whether substantial evidence supports the Commissioner's decision, however, is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

An individual is under a disability only if that individual
can establish that she has a physical or mental impairment which
prevents her from engaging in substantial gainful activity and is
expected to result in death or to last for a continuous period of
at least twelve months.  42 U.S.C. § 423(d).  The claimant's
impairments must be of such severity that she is not only unable
to perform her past relevant work, but cannot, considering her
age, education, and work experience, engage in any other
substantial gainful work existing in the national economy.  Id.

The Commissioner uses a five-step sequential process to
evaluate whether a claimant is disabled.  20 C.F.R. § 404.1520
(2006); Allen v. Barnhart, 357 F.3d 1140, 1142 (10th Cir. 2004);
Ray, 865 F.2d at 224.  "If a determination can be made at any of
the steps that a claimant is or is not disabled, evaluation under
a subsequent step is not necessary."  Williams v. Bowen, 844 F.2d
748, 750 (10th Cir. 1988).

In the first three steps, the Commissioner determines
whether claimant has engaged in substantial gainful activity
since the alleged onset, whether she has severe impairments, and
whether the severity of her impairments meets or equals the
severity of any impairment in the Listing of Impairments (20
C.F.R., Pt. 404, Subpt. P, App. 1).  Id. at 750-51.  If
plaintiff's impairments do not meet or equal the severity of a
listing, the Commissioner assesses claimant's RFC.  20 C.F.R.

-5-

§ 404.1520.  This assessment is used at both step four and step five of the sequential evaluation process.  <u>Id.</u>

After assessing claimant's RFC, the Commissioner evaluates steps four and five--whether the claimant can perform her past relevant work, and whether she is able to perform other work in the economy.  <u>Williams</u>, 844 F.2d at 751.  In steps one through four the burden is on claimant to prove a disability that prevents performance of past relevant work.  <u>Dikeman v. Halter</u>, 245 F.3d 1182, 1184 (10th Cir. 2001); <u>Williams</u>, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show other jobs in the national economy within plaintiff's capacity.  <u>Id.</u>; <u>Haddock v. Apfel</u>, 196 F.3d 1084, 1088 (10th Cir. 1999).

Plaintiff alleges numerous errors in rather a shotgun manner.  She claims the ALJ mischaracterized or failed to assess evidence regarding:  the report of plaintiff's Aug., 2004 MRI(R. 334), Dr. Woodall's medical record dated Sept. 23, 2006 stating "ins. told her the MRI showed there's nothing wrong c̄ her back," (R. 407), the report of a nerve conduction study performed by Dr. Kossow on Oct. 23, 2006 (R. 398-400), Dr. Shafer's examinations of plaintiff on Jul. 6, 2005 and Feb. 3, 2006 (R. 350-51, 357-58), and Dr. Shafer's status as a treating source or a nontreating source.[1]  (Pl. Br. 10-13).  She claims these errors

_____

[1]Plaintiff makes the distinction between being a "treating physician," or a "consultative examiner."  (Pl. Br. 12).  Although the court's analysis would be the same using plaintiff's

affected:  the step three finding regarding Listing 1.04A (Pl. Br. 11-12), the evaluation of Dr. Woodall's and Dr. Shafer's opinions (Pl. Br. 12, 16-17, 18), assessment of RFC (Pl. Br. 15), and the step two evaluation of severe impairments.  (Pl. Br. 15).

Additionally, plaintiff claims the ALJ erred in weighing the medical opinions of Dr. Woodall and Dr. Shafer.  (Pl. Br. 15-20). She claims the ALJ's RFC assessment is erroneous because:  it did not properly account for the evidence discussed previously, it states an ability to perform light work while assessing limitations to sedentary work, and it is based upon an erroneous evaluation of the physicians' opinions and of the credibility of plaintiff's allegations of symptoms.  (Pl. Br. 13-24).  Finally, plaintiff claims the step five finding is erroneous because it relies upon the vocational expert's responses to hypothetical questioning which is erroneous for the reasons previously discussed.  (Pl. Br. 25-26).  The court understands plaintiff's arguments to allege error:  at step two and step three of the sequential evaluation process, in evaluating the medical opinions of Dr. Woodall and of Dr. Shafer, in evaluating the credibility of plaintiff's allegations of symptoms, in making an RFC assessment, and at step five of the sequential evaluation process.

---

terms, the court chooses to use the terms defined in the regulations:  "treating source," and "non-treating source," respectively.  20 C.F.R. § 404.1502.

The Commissioner argues that the step three finding is proper, and that the ALJ properly weighed the medical opinions and evaluated the credibility of plaintiff's allegations of symptoms. (Comm'r Br. 4-14). He cites to record evidence which in his view supports these findings. Id. Therefore, the Commissioner argues, substantial evidence supports the ALJ's RFC assessment and the ALJ properly relied upon the vocational expert testimony based upon a hypothetical question consistent with the RFC assessed. Alternatively, the Commissioner argues that if the RFC assessment allows only sedentary work, the jobs of "stuffer," and "order clerk" presented by the vocational expert are sedentary work and constitute evidence that jobs of which plaintiff is capable exist in significant numbers in the economy. Therefore, the Commissioner argues that the decision below should be affirmed. The Commissioner failed to specifically respond to plaintiff's step two argument, perhaps because he missed plaintiff's allegation due to plaintiff's shotgun approach to alleging error. The court will address the issues in order of the sequential evaluation process.

**III. Step Two**

Plaintiff claims the ALJ erred in failing to find "two herniated discs with nerve root impingement" as a "severe" impairment. (Pl. Br. 15). Plaintiff's claim fails for two reasons. First, the ALJ found all of plaintiff's impairments in

-8-

combination are "severe."  An impairment is considered severe if
it has more than a minimal effect on plaintiff's ability to do
basic work activities such as walking, standing, sitting,
carrying, understanding simple instructions, responding
appropriately to usual work situations, and dealing with changes
in a routine work setting.  20 C.F.R. § 404.1521; <u>Williams</u>, 844
F.2d at 751.  Where a claimant has multiple impairments, the
regulations require that the Commissioner will consider the
combined effect of all of the claimant's medically determinable
impairments when making a disability determination, even those
that are not individually considered "severe."  20 C.F.R.
§ 404.1523.

Here, the ALJ specifically noted that he was considering the
combination of plaintiff's impairments in making his decision.
Thus, even though he did not specifically mention herniated discs
as a "severe" impairment, that fact alone is insufficient to
establish error at step two, because the ALJ considered all of
plaintiff's impairments in combination, and found them "severe."
<u>See</u> <u>Oldham v. Astrue</u>, 509 F.3d 1254, 1256 (10th Cir. 2007)(all
that is required at step two is a finding that plaintiff has
"severe" impairments); <u>see also</u> <u>Hill v. Astrue</u>, 289 Fed. Appx.
289, 292 (10th Cir. 2008)(failure to identify additional
impairments as "severe" at step two is harmless error); <u>Brescia
v. Astrue</u>, 287 Fed. Appx. 626, 629 (10th Cir. 2008)("Once an ALJ

has found that a claimant has at least one severe impairment, a failure to designate another disorder as "severe" at step two does not constitute reversible error").

Second, and most importantly, herniated discs may be a result of degenerative disc disease.  See <u>Degenerative Disc Disease - Topic Overview</u> (<u>available at</u> http://www.webmd.com/back-pain/tc/Degenerative-Disc-Disease-Topic -Overview, two pages, last viewed Feb. 20, 2009); <u>see also</u> <u>The Merck Manual of Diagnosis and Treatment</u> 1489 (Mark H. Beers, M.D. & Robert Berkow, M.D., eds., 17th ed. 1999) (Herniated Nucleus Pulposus, "Degenerative changes (with or without trauma) may result in protrusion or rupture of the nucleus.").  Therefore, when the ALJ found that plaintiff has "degenerative disc disease of the lumbar and cervical spine," he included all of the associated symptoms and conditions, and need not make a specific finding that plaintiff had herniated discs or other associated conditions such as bulging discs, thin or dessicated discs, spinal stenosis, osteoarthritis, or bone spurs.  The court finds no step two error.

**IV.  Step Three**

Plaintiff claims the ALJ improperly found that plaintiff's condition does not meet or equal the severity of Listing 1.04A because he misconstrued the evidence regarding nerve root compression and ignored the evidence that plaintiff had numbness

in the legs.  (Pl. Br. 11-12).  The Commissioner argues the ALJ properly found that the severity of plaintiff's condition does not meet or equal Listing 1.04A.  (Comm'r Br. 4-7).

As a preliminary matter, plaintiff's argument misunderstands the decision.  The ALJ did not find that plaintiff has never had numbness in the legs as implied in plaintiff's brief.  Rather, he noted that at an examination on Feb. 3, 2006 plaintiff had no numbness in her legs.  (R. 22)(citing Ex. 11F, p.87(R. 358)). The record cited supports the statement.  Moreover, no numbness in the legs on Feb. 3, 2006 was not the reason given for finding plaintiff's condition does not meet or equal the severity of Listing 1.04A.  The ALJ found plaintiff's condition does not meet or equal Listing 1.04A "because there is no nerve root compression."  (R. 22)(citing Ex. 2F, p.12(R. 281)).

The Commissioner has provided a "Listing of Impairments" which describes certain impairments that she considers disabling. 20 C.F.R. § 404.1525(a); see also, Pt. 404, Subpt. P, App. 1 (Listing of Impairments).  If plaintiff's condition meets or equals the severity of a listed impairment, that impairment is conclusively presumed disabling.  Williams, 844 F.2d at 751. However, plaintiff "has the burden at step three of demonstrating, through medical evidence, that his impairments 'meet all of the specified medical criteria' contained in a particular listing."  Riddle v. Halter, No. 00-7043, 2001 WL

-11-

282344 at *1 (10th Cir. Mar. 22, 2001) (quoting Sullivan v. Zebley, 493 U.S. 521, 530 (1990) (emphasis in Zebley)).

The listings "streamlin[e] the decision process by identifying those claimants whose medical impairments are so severe that it is likely they would be found disabled regardless of their vocational background." Bowen v. Yuckert, 482 U.S. 137, 153 (1987). "Because the Listings, if met, operate to cut off further detailed inquiry, they should not be read expansively." Caviness v. Apfel, 4 F. Supp. 2d 813, 818 (S.D. Ind. 1998).

The Commissioner points out that Listing 1.04A requires "Evidence of nerve root compression." (Comm'r Br. 5)(quoting 20 C.F.R., Pt. 404, Subpt. P, App. 1 § 1.04A. Plaintiff claims that the ALJ ignored or mischaracterized the report of an Aug., 2004 MRI which showed that disc herniations impinged on the left nerve roots at L4-L5 and L5-S1. (Pl. Br. 11)(citing (R. 334)). She argues that the MRI report at issue establishes nerve root compression, and had the ALJ read the report correctly, he would have found the criteria of Listing 1.04A are met.

As plaintiff cites, the Aug., 2004 MRI report states a "Conclusion" of "Disc herniations at L4-5 and L5-S1 causing impingement on the left nerve roots at both levels." (R. 334). However, plaintiff points to no record evidence or medical authority for the proposition that "impingement on the nerve root" is the same as "nerve root compression." Moreover, the

-12-

record contains affirmative evidence to support the ALJ's
finding.  The ALJ cited Ex. 2F, p.12 (R. 281), as the basis for
finding "there is no nerve root compression."  (R. 22).  In the
record cited by the ALJ, Dr. Hsu reviewed the Aug., 2004 MRI
report and concluded that the disc bulges at L4-L5, L5-S1, and
L1-L2 were "not causing nerve root compression."  (R. 281).  Dr.
Hsu's record states his opinion based upon his review of the
report of the Aug., 2004 MRI, and gives no indication that he
disagreed with the conclusions in the MRI report.[2]  <u>Id.</u>

     Neither the ALJ, who signed the decision at issue, nor this
court, nor plaintiff, nor her attorney is a medical expert
qualified to state an opinion whether "impingement on the nerve
root" is the same as "nerve root compression."  In the face of
Dr. Hsu's opinion which expressed no disagreement with the
conclusions in the Aug., 2004 MRI report, and in the absence of
medical authority that "impingement on the nerve root" is the
same as "nerve root compression," the court will not assume that
the ALJ erred in relying on Dr. Hsu's treatment records; that the
ALJ erred in failing to separately discuss the Aug., 2004 MRI
report upon which Dr. Hsu based his opinion; or that Dr. Hsu's

_____

     [2]Plaintiff states, "Apparently, Dr. Hsu received the first,
but not the second, MRI report which did document nerve root
compression."  (Pl. Br. 5, n.2).  Beyond her bare assumption that
"nerve root compression" is the same as "impingement on the nerve
root," plaintiff presents no evidence or argument in support of
her assertion that Dr. Hsu did not have the complete, updated MRI
report.

finding of "not causing nerve root compression" is contrary to, or inconsistent with, the MRI report's conclusion that there is "impingement on the left nerve roots at both levels." Plaintiff has shown no error at step three of the evaluation process.

**V.   Evaluation of Medical Opinions**

Plaintiff claims the ALJ improperly assessed evidence regarding Dr. Woodall's treatment records, Dr. Kossow's nerve conduction study, Dr. Shafer's examinations, and whether Dr. Shafer is a treating source or a nontreating source. (Pl. Br. 10-13). Plaintiff argues that the RFC assessment is defective because the ALJ did not afford controlling weight to Dr. Woodall's opinion, and improperly relied upon the opinion of Dr. Shafer as a basis for rejecting Dr. Woodall's opinion. (Pl. Br. 15-20). The Commissioner argues that the ALJ properly evaluated the medical opinions, and that Dr. Hsu's and Dr. Shafer's opinions are inconsistent with that of Dr. Woodall, therefore justifying a decision not to afford controlling weight to Dr. Woodall's opinion. (Comm'r Br. 8-10).

The Tenth Circuit has explained the nature of the inquiry regarding a treating source's medical opinion. Watkins v. Barnhart, 350 F.3d 1297, 1300-01 (10th Cir. 2003). The ALJ first determines "whether the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques.'" Id. at 1300 (quoting SSR 96-2p). If the opinion is well-supported,

the ALJ must then determine whether the opinion is consistent with other substantial evidence in the record.  Id. (citing SSR 96-2p).  "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight."  Id.

The threshold for denying controlling weight to treating source opinions is low.  The ALJ need only find evidence which is "such relevant evidence as a reasonable mind would accept as adequate to support a conclusion that is contrary to the conclusion expressed in the [treating source's] medical opinion." SSR 96-2, West's Soc. Sec. Reporting Serv., Rulings 113 (Supp. 2008).

Plaintiff's argument that Dr. Woodall's treating source opinion should be given controlling weight ignores the fact that Dr. Hsu's opinion (that plaintiff is capable of performing sedentary work)(R. 279) is contrary to Dr. Woodall's opinion (that plaintiff is unable to perform the lifting, sitting, standing, or walking required even for sedentary work).  (R. 402).  Moreover, Dr. Hsu treated plaintiff and might himself be considered a "treating source."[3]  Dr. Hsu's opinion is "such

_____

[3]The ALJ did not find Dr. Hsu is a treating source.  He stated only that Dr. Hsu was "claimant's examining neurologist." (R. 24).  Therefore, the court will not find that Dr. Hsu is a treating source.  The court notes, however, that the regulations contemplate that a physician may be a treating source who has treated or evaluated the claimant only a few times "if the nature and frequency of the treatment or evaluation is typical for" claimant's condition.  20 C.F.R. § 404.1502(definition of "treating source.").

relevant evidence as a reasonable mind would accept as adequate to support a conclusion that is contrary to the conclusion expressed in [Dr. Woodall's] medical opinion." SSR 96-2, West's Soc. Sec. Reporting Serv., Rulings 113 (Supp. 2008). Therefore, it was appropriate for the ALJ not to accord controlling weight to Dr. Woodall's opinion.

This determination, however, does not end the inquiry into the weight to be given the medical opinions. Watkins, 350 F.3d at 1300(If the treating source opinion is not given controlling weight, the inquiry does not end). A treating source opinion is "still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." Id. As the regulations require, where a treating source opinion is not given controlling weight, all of the medical opinions will be evaluated using the regulatory factors. 20 C.F.R. § 404.1527(d)("Unless [the Commissioner] give[s] a treating source's opinion controlling weight . . . [he] consider[s] all of the [regulatory] factors in deciding the weight [he] give[s] to any medical opinion.")(emphasis added).

Those factors are: (1) length of treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence;

-16-

(4) consistency between the opinion and the record as a whole;
(5) whether or not the physician is a specialist in the area upon
which an opinion is rendered; and (6) other factors brought to
the ALJ's attention which tend to support or contradict the
opinion.  Watkins, 350 F.3d at 1301; 20 C.F.R. §§ 404.1527(d)(2-
6), 416.927(d)(2-6); see also Drapeau v. Massanari, 255 F.3d
1211, 1213 (10th Cir. 2001) (citing Goatcher v. Dep't of Health &
Human Servs., 52 F.3d 288, 290 (10th Cir. 1995)).

When evaluating all of the medical opinions pursuant to the
regulatory factors, an ALJ must remember that a physician who has
treated a patient frequently over an extended period of time (a
treating source) is expected to have greater insight into the
patient's medical condition.  Doyal v. Barnhart, 331 F.3d 758,
762 (10th Cir. 2003).  But, "the opinion of an examining
physician who only saw the claimant once [(a nontreating source)]
is not entitled to the sort of deferential treatment accorded to
a treating physician's opinion."  Id. at 763 (citing Reid v.
Chater, 71 F.3d 372, 374 (10th Cir. 1995)).  However, opinions of
nontreating sources are generally given more weight than the
opinions of nonexamining sources who have merely reviewed the
medical record.  Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th
Cir. 2004); Talbot v. Heckler, 814 F.2d 1456, 1463 (10th Cir.
1987) (citing Broadbent v. Harris, 698 F.2d 407, 412 (10th Cir.
1983), Whitney v. Schweiker, 695 F.2d 784, 789 (7th Cir. 1982),

-17-

and <u>Wier ex rel. Wier v. Heckler</u>, 734 F.2d 955, 963 (3d Cir.
1984)).

> A treating physician's opinion must be given
> substantial weight unless good cause is shown to
> disregard it. <u>Frey v. Bowen</u>, 816 F.2d 508, 513 (10th
> Cir. 1987). When a treating physician's opinion is
> inconsistent with other medical evidence, the ALJ's
> task is to examine the other physicians' reports "to
> see if [they] 'outweigh[]' the treating physician's
> report, not the other way around." <u>Reyes v. Bowen</u>, 845
> F.2d 242, 245 (10th Cir. 1988). The ALJ must give
> specific, legitimate reasons for disregarding the
> treating physician's opinion that a claimant is
> disabled. <u>Frey</u>, 816 F.2d at 513.

<u>Goatcher</u>, 52 F.3d at 289-90.

It is in the ALJ's relative weighing of the medical opinions
that the court finds the errors alleged by plaintiff. No medical
opinion may be ignored, and all must be evaluated by the
Commissioner in accordance with the regulatory factors. 20
C.F.R. § 404.1527(d); SSR 96-5p, West's Soc. Sec. Reporting
Serv., Rulings 123-24 (Supp. 2008).

Here, the ALJ stated that he gave "less than controlling
weight" to Dr. Woodall's opinion, (R. 24), and gave reasons for
doing so: (1) The opinion is based on plaintiff's subjective
complaints. (R. 23). (2) The opinion is inconsistent with
plaintiff's testimony. (R. 24). (3) The opinion is not
supported by Dr. Woodall's records. <u>Id</u>. And, (4) the opinion is
not supported by the longitudinal record. <u>Id</u>. The ALJ discussed
Dr. Hsu's opinion that plaintiff could return to work with
certain limitations, and concluded, "The residual functional

-18-

capacity in this decision is consistent with Dr. Hsu's opinion
with the addition of the sitting and standing alternation that is
supported in the record after [Dr. Hsu's] opinion." Id.

Plaintiff attacks each of the bases for discounting Dr.
Woodall's opinion.  She first asserts that the ALJ erred in
finding Dr. Woodall's opinion was based upon plaintiff's
subjective complaints when in fact it was based upon the
physician's knowledge of the entire record, including objective
testing, such as the MRIs and nerve conduction testing.  (Pl. Br.
16-17).  The court may not reweigh the ALJ's evaluation of the
evidence and determine whether in this case objective testing was
a greater basis for Dr. Woodall's opinion than were plaintiff's
subjective complaints.  White, 287 F.3d at 905; Hackett v.
Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005).  However, if an
ALJ is to discount a physician's opinion because it is based upon
plaintiff's subjective complaints, he must at least point to
record evidence in the physician's reports or treatment notes
which justify a finding that the physician's opinion is based
upon plaintiff's subjective complaints.  Langley v. Barnhart, 373
F.3d 1116, 1121 (10th Cir. 2004)(nothing in the physician's
reports indicate he relied only on plaintiff's subjective
complaints); Victory v. Barnhart, 121 Fed. Appx. 819 (10th Cir.
Feb. 4, 2005)(the ALJ's conclusion was without support in the
record).  The ALJ did not do so here, and it was error to

discount Dr. Woodall's opinion as being based upon plaintiff's subjective complaints.

Plaintiff claims the ALJ erred in finding Dr. Woodall's opinion is not supported by his treatment records or by the longitudinal record(reasons 3 and 4).  The court agrees.  In support of reasons 3 and 4, The ALJ stated that:  Dr. Woodall's notes showed plaintiff's pain markedly improved with physical therapy; the treatment notes dated Aug. 4, 2006 show decreased range of motion in the neck and pain in the back, but negative straight leg raising and equal leg strength and equal handgrip; and the Sept. 25, 2006 treatment notes "support that the MRI showed 'nothing wrong with her back.'"  (R. 23).

Plaintiff underwent physical therapy between Oct. 18, 2004 and Nov. 23, 2004.  (R. 287-91).  During this period, and as the ALJ stated, on Oct 29 Dr. Woodall noted that plaintiff's lumbosacral back pain had "markedly improved."  (R. 23)(citing Ex. 7F, p.75(R. 308)).  However, the physical therapy notes from the same date show that plaintiff "only gets temporary relief" from physical therapy.  (R. 291).  A physical therapy progress note dated Oct. 28, 2004 stated plaintiff "gets temporary relief with the treatment."  (R. 288).  In their final progress note, dated Nov. 23, 2004, the physical therapists noted:

> Since beginning therapy, the patient has made
> improvement as far as increasing her active trunk range
> of motion.  However, her subjective pain level has not
> really changed.  At this time, the patient is not being

scheduled for any more physical therapy since we do not
feel like she is making significant progress.

(R. 287).  At the next office visit, Dr. Woodall noted:  "She
still has a lot of pain in the lumbosacral back.  One day it will
radiate down the right leg and one day it will radiate into the
left." (R. 307).  In chronological context, the fact that Dr.
Woodall noted marked improvement in back pain <u>on one visit</u>, does
not justify a finding that his opinion is inconsistent with
either his own treatment notes or the longitudinal record.

     In the treatment notes dated Aug. 4, 2006, Dr. Woodall noted
decreased range of motion in the neck and pain in the back, but
negative straight leg raising, equal leg strength, and equal
handgrip as stated by the ALJ.  (R. 408).  However, the ALJ did
not explain how this is inconsistent with Dr. Woodall's opinion.

     Finally, contrary to the ALJ's assertion, the doctor's Sept.
25, 2006 note does not support the ALJ's conclusion.  The "note"
at issue is a message from plaintiff to Dr. Woodall that the
"ins. told her the MRI showed there's nothing wrong c̄ her back."
(R. 407).  While this statement clearly indicates plaintiff's
understanding that the insurance company believed an MRI showed
no problem with her back, there is no indication in the record
that Dr. Woodall adopted that position.  Moreover, the court
finds no direct evidence (beyond plaintiff's perception) of the
insurance company's opinion.  The allusion in the note does not
justify either a finding that Dr. Woodall's opinion is

-21-

inconsistent with his treatment notes, or a finding that his opinion is inconsistent with the longitudinal record. The note at issue merely establishes that Dr. Woodall's opinion is inconsistent with plaintiff's report of the insurance company's opinion. This is an insufficient basis to discount Dr. Woodall's opinion.

As plaintiff asserts, the ALJ found Dr. Woodall's opinion is inconsistent with the longitudinal record, in part, because he found it inconsistent with the opinion of Dr. Shafer who did not refer plaintiff to a specialist and did not recommend surgery. (R. 24, 25). Plaintiff claims this is error because Dr. Shafer is a nontreating source who is in no position to refer plaintiff to a specialist or to recommend surgery. (Pl. Br., 12). The court agrees. In July, 2005, Dr. Shafer provided a letter report of his consultation to the Disability Determination Service. (R. 350-51). He noted plaintiff's subjective report of her current problems, her past medical history, her social history, and her family history. (R. 350). He noted the results of his physical examination, made an assessment of "Lumbar disc herniations times two," and stated that he would send the report to "Disability Determination." (R. 351). In Feb. 2006, Dr. Shafer again provided a letter report of another consultation to the Disability Determination Service: including plaintiff's subjective report of her current problems, her past medical

-22-

history, her social history, her family history and the results
of his physical examination.  (R. 357-58).  The Feb. 2006 report
included an assessment of four medical diagnoses:  (1) "Low back
pain with radiculopathy secondary to lumbar herniated disc at L4-
5 and L5, S1."  (2) "Noninsulin dependent diabetes.  Recent
Hemaglobin A1C was 8.4 that was a week ago."  (3) "Irritable
bowel syndrome."  And, (4) "Hypertension."  (R. 358).

     As the record confirms, Dr. Shafer was a nontreating source
who examined plaintiff twice and provided reports to the state
agency each time.  Since Dr. Shafer was not a treating source and
was retained to provide a consultative report to the state
agency, one would not expect him to refer plaintiff for
consultative treatment with a specialist or to recommend surgical
treatment unless his consultative report to the state agency
specifically noted his opinion that a referral was (or was not)
necessary, or that surgery was (or was not) necessary.  Here, Dr.
Shafer stated no opinion with regard to surgery or a specialist
referral.  (R. 350-51, 357-58).  From the facts presented in Dr.
Shafer's reports, it is not possible to infer Dr. Shafer's
opinion regarding the necessity of surgery or of a specialist
referral.  Therefore, it was error for the ALJ to note that Dr.
Shafer did <u>not</u> recommend surgery or refer plaintiff to a
specialist, and thereby attempt to discredit Dr. Woodall's

opinion by implying that Dr. Shafer did not believe plaintiff's condition is as severe as Dr. Woodall believed.

Plaintiff notes that Dr. Shafer examined her and provided a report to the state agency, both in July 2005, and in Feb. 2006, and argues that in his decision the ALJ erred because he did not discuss the report of the July 2005 examination, and provided two nearly-identical discussions of the Feb. 2006 examination. (Pl. Br. 12)(citing (R. 24, 25)). The court cannot conclude that the ALJ erred in this regard because Dr. Shafer's reports are so similar that it would not be error merely to fail to mention both of them in the decision. The ALJ is not required to discuss every piece of evidence. Clifton v. Chater, 79 F.3d 1007, 1009-1010 (10th Cir. 1996). Moreover, the fact that the Feb. 2006 report was discussed twice may be a mere scrivener's error, and plaintiff has shown no factual error in either of the discussions.

Plaintiff also claims error in the ALJ's finding that Dr. Woodall's opinion is inconsistent with plaintiff's testimony regarding ability to lift a gallon of milk, ability to sit for an hour, and ability to do laundry and/or shopping. Again, the court agrees with plaintiff.

The ALJ stated that a gallon of milk weighs approximately ten pounds, and therefore, Dr. Woodall's opinion that plaintiff can lift less than ten pounds frequently is inconsistent with

plaintiff's testimony that she can lift a gallon of milk.  (R. 23).  As plaintiff points out, the ALJ erred as a matter of fact in finding that a gallon of milk weighs approximately ten pounds. Courts have noted that a gallon of milk weighs approximately eight pounds.  <u>Butler v. Barnhart</u>, 353 F.3d 992, 1002 (D.C. Cir. 2004); <u>Oshkeshequoam v. Barnhart</u>, 274 F. Supp. 2d 985, 996 (C. D. Ill. 2003).  An internet search reveals that a gallon of milk weighs approximately eight and one-half pounds. http://wiki.answers.com/Q/How_much_does_a_gallon_of_milk_weigh(8. 5 lbs/gallon); http://www.ces.ncsu.edu/rowan/pubs/dairy/ gotmilkfacts2001.htm(8.6 lbs/gallon); http://www.wisagclassroom.org/teachers/docs/faces/Dairy%20Plans .pdf(8.6 lbs/gallon).  Therefore, Dr. Woodall's opinion that plaintiff can occasionally lift less than ten pounds and never lift twenty pounds or more is not inconsistent with plaintiff's testimony that the most she can lift is a gallon of milk.

Regarding plaintiff's abilities to sit and do laundry or shopping, the ALJ stated:

> The claimant testified to less restrictive limitations
> than those opined by Dr. Woodall.  She specifically
> testified that she has to get up and move around after
> an hour of sitting.  An ability to sit for an hour then
> get up and move around doing laundry and/or shopping is
> not consistent with an ability to sit for 1 hour total
> in an 8 hour workday or stand for 1 hour total in an 8
> hour workday.

(R. 23).  As plaintiff points out, the ALJ mischaracterized

plaintiff's testimony.  (Pl. Br. 19)(citing (R. 427)).  In

relevant part, the hearing transcript reveals:

> Q    How long are you able to sit before the pain makes
>      you have to move?
>
> A    I usually can't watch a whole TV show.  I
>      mean less than an hour.  I usually have to
>      get up on commercials and go walk around or
>      you know, go do something.
>
>                 * * *
>
> Q    . . . How do you do the laundry?  Are you able to
>      do laundry?
>
> A    Yeah, I prefer to hang it on my clothesline
>      because I don't like to use my dryer.  It is
>      almost easier to put it on the clothesline.  I
>      just -- I have a deep freeze [sic].  You have to
>      take it out of the washer and put it in the basket
>      and then I just take some and put it over my
>      shoulder and take it outside or I'll have my
>      daughter carry the basket out for me.  I've got a
>      step that's about thigh high so I don't have to
>      lean over.  It's harder to get it out of the
>      dryer, leaning over and reaching in to the dryer
>      than it is to the [sic] hang on the clothesline so
>      to get it, you know, if I -- I'll have my
>      granddaughter or my daughter a lot of times get it
>      out of the dryer for me, or my husband if he's
>      home so --
>
>                 * * *
>
> Q    How about grocery shopping, is that a problem at
>      all?
>
> A    Yeah, much of the time -- my daughter works at the
>      hospital and so she doesn't work everyday.  She
>      works 12 hour shifts.  And so if she's able to come
>      with me, I usually try and plan it on a time when
>      she's able to come with me and that way she can
>      unload the groceries into the vehicle and then she
>      unloads then when I get home.  If she is not able to

come with me and I absolutely have to come to town
it takes me about twice as long that it used to
because I've got to stop and sit on a bench or
something somewhere.  And I always have them load
the bags light so that I can just take one at a time
and put them in the vehicle.  We have a Ford
Explorer so I don't have to bend over.  It's, you
know, it sits up so that it's easy to get things
in.  And or I'll just, you know, come, sometimes
I'll come by myself if I just have a very few
things to get.  And I don't run all over town.
Usually I make two, three stops at the most and
that's it.  I don't -- I'm not, you know, going --
walking around the mall all town [sic] or -- you
know, Sam's and Wal-Mart and that's about it.

Q    In and out?

A    Yeah.

(R. 427-29).

As plaintiff argues, the record reveals that plaintiff
testified that she <u>cannot</u> sit for an hour, and that she makes
significant accommodations in order to do her laundry and
shopping.  Dr. Woodall's opinion (that plaintiff can sit for one
hour in a workday, can stand and/or walk a total of one hour in a
workday, and must alternate sitting and standing every fifteen
minutes) is not directly inconsistent with plaintiff's testimony
as quoted above.  Moreover, the ALJ did not discuss differences
between the sitting and standing necessary to watch TV or to
perform chores about the home and the sitting and standing
required for work.  The bases given for discounting Dr. Woodall's
opinion are not supported by substantial evidence in the record.

-27-

The court does not intend to imply by this finding that Dr. Woodall's opinion must be given controlling or even significant weight.  Rather, the Commissioner must weigh all of the medical source opinions and must explain the weight given each opinion. As the Commissioner argues, the opinions of Drs. Hsu and Shafer contain findings which are inconsistent with Dr. Woodall's opinion.  (Comm'r Br. 8-9).  As the ALJ stated, except for the sitting and standing alternation, his RFC assessment is consistent with Dr. Hsu's opinion regarding plaintiff's abilities.  However, the ALJ did not explain the relative weight given to each of the physicians' opinions.  It is clear the ALJ gave greater weight to the opinion of Dr. Hsu than to the opinion of Dr. Woodall, but the reasons given are not supported by substantial evidence in the record.  Moreover, the ALJ did not consider whether Dr. Hsu is a treating source, and did not explain why Dr. Hsu's opinion is worthy of greater weight than the opinion of Dr. Woodall.  Remand is necessary for the Commissioner to properly weigh the medical opinions in accordance with the standards discussed herein.

## VI.  Remaining Allegations of Error

The court has found remand is necessary for a proper evaluation of the medical opinions.  After properly evaluating the medical opinions, the Commissioner must reassess plaintiff's RFC, and complete the remainder of the sequential evaluation

process.   Therefore, it would be premature to evaluate the
credibility determination and the RFC assessment made in the
decision at issue.   On remand, plaintiff may make her arguments
regarding the credibility of her allegations and the RFC
assessment, and the Commissioner will complete the process.

The court notes plaintiff's argument that the RFC assessed
is more consistent with sedentary work than light work.   (Pl. Br.
14).   As plaintiff points out, the ALJ assessed plaintiff with
the ability to lift fifteen pounds occasionally and to stand
and/or walk two hours in a workday (R. 23), whereas light work
generally requires the ability to lift twenty pounds occasionally
and to stand and/or walk six hours in a workday.   20 C.F.R.
§ 404.1567(b); SSR 83-10, West's Soc. Sec. Reporting Serv.,
Rulings 29 (1992).

One might assume that the difference between plaintiff's
capabilities and the general requirements for light work were
compensated for by securing testimony of a vocational expert.
However, the ALJ never presented a single hypothetical question
to the expert containing both a restriction to lifting fifteen
pounds occasionally, and a restriction to standing and/or walking
only two hours in a workday.   Hypothetical question no. 1
supposed an ability to lift fifteen pounds occasionally, but an
ability to stand and/or walk six hours in a workday.   (R. 434).
Hypothetical question no. 2 supposed an ability to stand and/or

-29-

walk two hours in a workday, but an ability to lift only ten pounds occasionally. (R. 436). Thus, the ALJ's RFC findings that plaintiff is able to lift fifteen pounds occasionally <u>and</u> to stand and/or walk only two hours in a workday were not presented together in a hypothetical question to the vocational expert. Consequently, there is no vocational expert testimony to support The ALJ's finding that plaintiff is capable of performing work as an electrical assembler or as a marker, both of which are jobs at the light exertional level and presumptively requiring the ability to lift twenty pounds[4] and to stand and/or walk six hours in a workday. The court suggests that the Commissioner clarify this aspect of the RFC assessment, if necessary, on remand.

**IT IS THEREFORE RECOMMENDED** that the decision below be REVERSED and that judgment be entered in accordance with the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for further proceedings consistent with this opinion.

Copies of this recommendation and report shall be delivered to counsel of record for the parties. Pursuant to 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b), and D. Kan. Rule 72.1.4, the parties may serve and file written objections to this recommendation within ten days after being served with a copy.

---

[4]The vocational expert testified in response to hypothetical question no. 1, that an individual could perform light, unskilled jobs as an electrical assembler or a marker if she could lift only <u>fifteen</u> pounds occasionally, and could stand and/or walk six hours in a workday. (R. 435).

Failure to timely file objections with the court will be deemed a waiver of appellate review.  <u>Morales-Fernandez v. INS</u>, 418 F.3d 1116, 1119 (10th Cir. 2005).

Dated this 10th day of March 2009, at Wichita, Kansas.


s/Donald W. Bostwick
**DONALD W. BOSTWICK**
**United States Magistrate Judge**